UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CLIFFORD L. WOODS, JR.,**

                              **Plaintiff,**

v.                                                                                              5:15-CV-027 (BKS-ATB)

**CITY OF SYRACUSE, CHIEF OF POLICE**
**FRANK FOWLER, in his official capacity,**
**SGT. LLUKACI and POLICE OFFICER SZAKACS,**
Individually and in their official capacity as Police
Officers for the City of Syracuse; jointly and severally,

                              **Defendants.**
_____

**APPEARANCES:**

For Plaintiff:
John W. Sharon, Esq.
109 South Warren Street, Suite 314
Syracuse, New York 13202

For Defendants:
Joseph E. Fahey, Corporation Counsel of the
City of Syracuse
Todd M. Long, Assistant Corporation Counsel
Christina F. DeJoseph, Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202


**Hon. Brenda K. Sannes, United States District Court Judge:**


**Order Regarding Motions in Limine**

**Introduction**

Presently before the Court are the parties' motions in limine.  (Dkt. Nos. 48, 57, 62, 66, 68, 80, 84).  Plaintiff seeks to: 1) preclude evidence of the BB Gun he possessed at the time of his arrest on January 14, 2014; 2) admit evidence of Plaintiff's complaint to the Syracuse Citizen Review Board ("CRB") and the Board's findings; 3) preclude testimony from Syracuse Police Department ("SPD") Detective Mark Rusin, SPD Officers David Hart and Paul Larkin, and SPD Deputy Chief Joseph Cecile; 4) preclude evidence of Plaintiff's medical records, except those relevant to his injuries sustained on January 14, 2014; 5) preclude evidence of police reports pertaining to his arrest; 6) preclude evidence of any audio or printed materials relative to the 911 call pertaining to his arrest; and 7) preclude evidence of his prior criminal convictions or any alleged bad act.  (Dkt. No. 62).  Defendants seek to: 1) preclude evidence of the CRB complaint, investigation, and findings regarding the incident; 2) dismiss defendants SPD Sergeant Llukaci, SPD Chief Fowler, and City of Syracuse; 3) preclude evidence of any racial insult or remark allegedly made in the presence of the Plaintiff or his associates by a defendant or employee thereof; 4) preclude evidence of any of the allegations or assertions contained in his causes of action that have already been dismissed by this Court; and 5) preclude testimony by Plaintiff's witnesses Natalie S. Gordon and Clifford Woods, Sr.  (Dkt. Nos. 48, 66, 68).

At the final pre-trial conference on March 24, 2017, based on discussions with counsel and for the reasons stated on the record, the Court made the following rulings: 1) denied Plaintiff's request to preclude evidence of the BB Gun he possessed at the time of his arrest on January 14, 2014; 2) denied as moot Plaintiff's request to preclude testimony from SPD Detective Mark Rusin, SPD Officers David Hart and Paul Larkin, and SPD Deputy Chief Joseph

Cecile; 3) denied as moot Plaintiff's request to preclude evidence of Plaintiff's medical records, except those relevant to his injuries sustained on January 14, 2014; 4) denied as moot Plaintiff's request to preclude evidence of police reports pertaining to his arrest; 5) granted Plaintiff's request to preclude evidence of the 911 call pertaining to his arrest, to the extent it was not heard by Defendant Officer Szakacs before the incident; 6) denied as moot Plaintiff's request to preclude evidence of his prior criminal convictions or any alleged bad acts; 7) denied as moot Defendants' request to preclude evidence of any racial insult or remark allegedly made in the presence of the Plaintiff or his associates by a defendant or employee thereof; 8) denied as moot Defendants' request to preclude evidence of any of the allegations or assertions contained in his causes of action that have already been dismissed by this Court; and 9) denied as moot Defendants' request to preclude testimony by Plaintiff's witness Clifford Woods, Sr.[1]

      The Court reserved decision and permitted additional briefing on: 1) the parties' requests regarding evidence from Plaintiff's CRB case; 2) Defendants' request to dismiss defendants SPD Sergeant Llukaci, SPD Chief Fowler, and City of Syracuse; and 3) Defendants' request to preclude testimony by Plaintiff's witness Natalie S. Gordon. The Court also permitted briefing on whether to admit evidence of the firearm used by Defendant Szakacs to strike Plaintiff during the arrest, an issue Plaintiff raised for the first time at the final pre-trial conference. Having considered the additional briefing submitted by the parties (Dkt. Nos. 80, 83, 84), the Court rules as follows.

---

[1] To the extent Defendants seek to preclude Mr. Woods, Sr. by way of their April 27, 2017 letter (Dkt. No. 84, p. 2), this request must be denied since Defendants' previous attorney stated at the final pre-trial conference on March 24, 2017 that he had no objection to Mr. Woods, Sr. testifying as to his observations of his son.

3

### 1) Evidence from Plaintiff's CRB Case

Plaintiff seeks to introduce evidence of a complaint he filed with the CRB on January 24, 2014, alleging that he was subjected to excessive force during his arrest on January 14, 2014, and a findings letter from the CRB dated March 27, 2014, which "sustained" the excessive force allegation. (Dkt. Nos. 62, 74, 80). Defendants seek to preclude such evidence, on the grounds that it is "patently unreliable and therefore not relevant, is more prejudicial than probative, and would serve merely to inflame and confuse the jury," and therefore, "should be deemed inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403." (Dkt. No. 51, pp. 4-5; *see also* Dkt. No. 83, pp. 1-2). Defendants argue that "there is no defined legal standard employed by the CRB when deciding whether or not to 'sustain' an allegation," that testimony before the CRB "is not elicited under oath or subject to any rules of evidence," that "neither Defendants nor anyone acting on their behalf was present for or took part in the CRB hearing process," and that "[e]vidence of the CRB's findings will lead the jury to the impermissible conclusion that because the allegations were presented before a body of individuals labeled a 'Board' and sustained by same, Defendants *must have* committed a constitutional violation against Plaintiff." (Dkt. No. 51, pp. 6-10). In response, Plaintiff argues that "this evidence would be relevant and assist the jury." (Dkt. No. 70, p. 3). Plaintiff also indicates that he intends to subpoena the CRB file for the Court's in camera review, and that "it is impossible to move forward without knowing what is in it." (Dkt. No. 80, p. 1).

As an initial matter, Plaintiff has not disputed that the CRB evidence is hearsay, nor has he identified an exception to the rule that would allow admission of these out-of-court statements. The CRB findings could in theory constitute public records under Rule 803(8) of the

4

Federal Rules of Evidence, which provides an exception for "a record or statement of a public office if it sets out the office's activities; a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8).  On the other hand, Defendants have made a significant showing that the evidence may lack trustworthiness.  However, the Court need not resolve whether the CRB evidence is admissible under Rule 803(8), since the Court finds that it is subject to exclusion under Rule 403, in that any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay.  *See Morales v. City of New York*, No. 99 Civ. 10004, 2001 WL 8594, at *6 n.4, 2000 U.S. Dist. LEXIS 18711, at *19 n.4 (S.D.N.Y. Jan. 2, 2001) (excluding findings of the Civilian Complaint Review Board, an independent agency which investigates complaints against New York City police officers, on the basis that such evidence "would confuse the jury by offering conclusions regarding the factual issues the jury was to determine, and prolong the proceedings by putting into issue the details of the investigation supporting the findings, and that these risks substantially outweighed the probative value of the [evidence]"); *see also Patton v. City of New York*, No. 00 Civ. 8875, 2002 WL 1428855, at *1, 2002 U.S. Dist. LEXIS 11479, at *1 (S.D.N.Y. June 27, 2002) (citing *Morales* and precluding evidence of "the closing memorandum from the Civilian Complaint Review Board investigation into the within incident . . . pursuant to Rule 403 of the Federal Rules of Evidence").

    2) **Defendants Llukaci, Fowler, and City of Syracuse**

5

Defendants argue that SPD Sergeant Llukaci, SPD Chief Fowler, and City of Syracuse should be dismissed as defendants in this action since there is no remaining basis for liability against them. (Dkt. No. 51, pp. 11-12). Plaintiff has not responded to this argument or articulated any basis for liability against these defendants. In the Court's February 1, 2017 Memorandum-Decision and Order, the Court dismissed Plaintiff's claims against Defendant Llukaci for excessive force and failure to intervene under Section 1983, and assault and battery under New York State Law, as well as Plaintiff's claim for municipal liability against the City of Syracuse. (Dkt. No. 35). Defendants correctly point out that the "causes of action remaining in this case all pertain to Officer Szakacs and the actions taken by him in effectuating Plaintiff's arrest on January 14, 2014." (Dkt. No. 51, p. 11). It is axiomatic that personal involvement of an individual defendant "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Plaintiff's counsel stated at the final pre-trial conference that he did not have any evidence of personal involvement by Defendant Llukaci or Fowler as to any of the remaining causes of action. Since there are no allegations that these defendants were personally involved in Plaintiff's remaining claims, and Plaintiff has not identified any such involvement or theory of liability against them, these defendants must be dismissed from the case.[2]

As to the City of Syracuse, given the Court's dismissal of Plaintiff's Section 1983 municipal liability claim, and Plaintiff's failure to allege or identify any other theory of liability against the City of Syracuse, this defendant must also be dismissed from the case. *See generally*

---

[2] Plaintiff has not alleged supervisory liability against Defendants Llukaci or Fowler under any of the methods recognized by the Second Circuit in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978) ("we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

### 3) Testimony of Natalie S. Gordon

Defendants also seek to preclude the testimony of Ms. Gordon, Plaintiff's therapist, on the grounds that Plaintiff failed to disclose her as a witness. (Dkt. No. 68, pp. 17-20). Under Rule 26, a party is required to disclose the name of any individual likely to have discoverable information, and to supplement such disclosures in a timely manner. Fed. R. Civ. P. 26(a)(1), (e)(1). Moreover, a party must disclose the identity of any expert witness it may use at trial to present evidence under Rule 702, 703, or 705. Fed. R. Civ. P. 26(a)(2). At the final pre-trial conference, Plaintiff's counsel clarified that Ms. Gordon would not be offered as an expert. (*See also* Dkt. No. 80, p. 2). Nonetheless, there is no dispute that Plaintiff failed to make the required disclosures for Ms. Gordon to testify as a lay witness.

Under Rule 37(c)(1), if a party fails to make the required Rule 26 disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an adversary with new evidence," *Johnson Electric North America v. Mabuchi Motor America Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999), and "to alert an opposing party of the need to take discovery of the named witness." *Pal v. N.Y. Univ.*, No. 06 Civ. 5892, 2008 WL 2627614, at *5, 2008 U.S. Dist. LEXIS 50902, at *10 (S.D.N.Y. June 30, 2008). But the Second Circuit has held that preclusion is not mandatory under Rule 37, and that "the court does have discretion to impose other, less

7

drastic sanctions." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006). In determining whether to preclude a witness from testifying a court must consider four factors: "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns*, Inc., 118 F.3d 955, 961 (2d Cir. 1997)).

     Considering the first factor, Plaintiff has not offered any explanation or justification for the failure to comply with the disclosure requirement, instead oddly stating that it is "not applicable to this matter." (Dkt. No. 80, p. 2). This factor thus weighs in favor of preclusion. As to the importance of Ms. Gordon's testimony, Plaintiff asserts that she "is expected to testify as to any damages caused Plaintiff by being struck on the head with a police handgun." (*Id.*, p. 2). Presumably, Plaintiff is referring to related psychological distress. The importance of the proffered testimony is somewhat diminished by Rule 701's limitation that a lay witness may not offer an opinion that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). In other words, as a lay witness, Ms. Gordon would not be able to offer an opinion as to Plaintiff's condition derived from her specialized knowledge as a therapist. As to the prejudice to Defendants, Plaintiff argues that "there is no prejudice to the Defendants as Therapist Gordon has been known to Defendants for months and have been in receipt of her records," and "[t]here is plenty of time to depose her if the Defendants so decide." (Dkt. No. 80, p. 2). In response, Defendants argue that they "relied on Plaintiffs assertion that no expert would be retained . . . and therefore did not seek to depose Ms. Gordon, insist on proper

8

disclosure, or retain any experts themselves to evaluate Plaintiff," and further that "[r]equiring Defendants to scramble to collect additional records, and subsequently deposing Ms. Gordon and obtaining the transcript of her testimony while securing our own expert and making arrangements for that expert to review materials, evaluate Plaintiff, and produce a written report with trial scheduled to begin in less than sixty (60) days is certainly prejudicial to Defendants." (Dkt. No. 83). However, as discussed above, Ms. Gordon is not being offered as an expert, and her testimony as a lay witness would necessarily be limited. Further, Defendants' own exhibit list indicates that they intend to introduce as evidence medical records created by Ms. Gordon. (*See* Dkt. No. 47, p. 2). At the final pre-trial conference, defense counsel suggested that these records would be used to show that Plaintiff's psychological distress predated the incident at issue in this case. The admission of Ms. Gordon's treatment records regarding Plaintiff would significantly diminish any prejudice associated with her testimony. Moreover, since trial has been adjourned until June 12, 2017 (*see* Dkt. No. 78), Defendants have the opportunity to cure any potential prejudice by deposing Ms. Gordon. Finally, as to the possibility of a continuance, this measure is unnecessary since trial has already been adjourned.

After carefully weighing the relevant factors, despite Plaintiff's unexplained failure to disclose Ms. Gordon, given the relative importance of her testimony and the minimal prejudice to Defendants (which may be substantially cured), the Court declines to impose the drastic sanction of preclusion. Accordingly, Ms. Gordon will be permitted to testify as a lay witness, subject to timely objections, in accordance with the Federal Rules of Evidence.[3] *See* Fed. R. Evid. 701(c); *see also* Advisory Committee's Note to 2000 Amendments (explaining "that the

---

[3] Given the apparent mutual interest in admitting evidence of Ms. Gordon's treatment records regarding Plaintiff, the parties are encouraged to reach an agreement or stipulation as to Ms. Gordon's testimony.

9

distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field'") (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)); 1 MCCORMICK ON EVID. § 11 (7th ed. 2016) (explaining that the line can be drawn by "focusing on the fundamental question of why the opinion is being admitted: Is it being accepted because it is impractical to verbalize the primary data such as the witness's personal experience (the rationale for lay opinion) or because the witness has a technique or method for drawing a more reliable inference from the primary data (the rationale for expert opinion)?"); *United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) (holding that a law enforcement officer's testimony was improperly admitted as lay testimony because he "did more than simply describe what he found in the gas tank and what he perceived," but rather "described how the float on the outside of the gas tank worked and why the gas gauge would have registered zero to empty while the drugs were in the gas tank," knowledge that he acquired "through his experience as a border agent inspecting vehicles, not through the reasoning processes of the average person").

### 4) Evidence of Defendant Szakacs's Firearm

Further, at the final pre-trial conference, Plaintiff's counsel stated that he would like to introduce Officer Szakacs's service weapon, a .45 caliber Smith & Wesson firearm, to help the jury understand the force used by Officer Szakacs. Defense counsel objected to the request on the basis that the parties already agreed to a stipulation that Defendant Szakacs "struck Plaintiff on the top of his head with his right hand, which contained his handgun." (Dkt. No. 67, ¶ 20). Plaintiff further argues that "[a]s Defendant Szakacs has testified that the use of his handgun as a

10

bludgeon on my client's head was an act of deadly force the jury should be able to see and feel the cause of the injury." (Dkt. No. 80, p. 2). In response, Defendants argue that the handgun is not relevant since "[i]t undisputed that the butt of Officer Szakacs' handgun struck the right side of Plaintiff's head causing a three (3) centimeter laceration," and moreover, "[t]he introduction of the handgun as demonstrative evidence would simply inflame the jury, rather than illustrate or clarify testimony." (Dkt. No. 83, p. 4).

Based on the stipulation, there is no dispute that Defendant Szakacs used his firearm in striking Plaintiff. Nevertheless, evidence of the firearm itself may assist the jury in assessing the reasonableness of Defendant Szakacs's actions, the critical question for Plaintiff's excessive force claim, which "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).

The Supreme Court has recognized that the "accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Old Chief v. U.S.*, 519 U.S. 172, 189 (1997). As one treatise put it, "[o]bjects offered as playing an actual and direct part in the incident or transaction giving rise to a trial, for example the alleged weapon in a murder prosecution, are commonly called 'real' evidence. Such objects are treated as independent substantive sources of evidence because the trier of fact may draw inferences from the objects themselves about some fact of consequence." 2 MCCORMICK ON EVID. § 213 (7th ed. 2016). "Once an item of real evidence has been authenticated, it is still potentially subject to the judge's discretion to exclude

11

pursuant to Federal Rule 403.  However, it is customary for judges to treat real evidence as being highly probative and thus of considerable assistance to the jury." *Id.*  Following this reasoning, firearms and other weapons have been admitted as "real evidence" where doing so would assist the jury.  *See, e.g., United States v. Green*, 887 F.2d 25, 27 (1st Cir. 1989) (finding no abuse of discretion in admission of firearms as evidence, noting that "the district judge maintained strict control over the presentation of the firearms evidence to ensure that unfair prejudice did not result"); *United States v. Muscato*, 534 F. Supp. 969, 974 (E.D.N.Y. 1982) ("The physical evidence of the gun provided some assurance (unless the jury believed that this real evidence was fabricated by the prosecution) that the tale was not cut out of whole cloth.").

Accordingly, the Court will permit admission of Defendant Szakacs's firearm, at least for viewing purposes, subject to appropriate safety precautions.  Following consultation with court security officials and further deliberation, the Court will rule on whether the jury may touch or handle the firearm.  *See generally United States v. Mueller*, 405 F. App'x 648, 651 (3d Cir. 2010) (finding that the district court operated within its broad discretion in denying the jury's requests to hold a firearm that had been entered in evidence in felon in possession prosecution); *United States v. Burrell*, 963 F.2d 976, 982–83 (7th Cir. 1992) ("We do not believe the trial judge abused his discretion by allowing the jury to handle the defendants' guns before closing arguments.  All the weapons had been admitted into evidence.  Even assuming that there was a possibility that such a display of firepower might have prejudiced the jury, we do not think it was so great that the treatment of the weapons was a clear abuse of discretion.  The jury is entitled to examine carefully all the evidence in order to understand fully the events at issue."); *Hauseur v. Virga*, No. 08 Civ. 94, 2011 WL 3809925, at *43, 2011 U.S. Dist. LEXIS 97018, at *123 (C.D.

Cal. July 22, 2011) ("it is doubtful that physically handling the gun, as opposed to viewing it closely, would have led the jury to either highly probative or reliable evidence"), *report and recommendation adopted as modified*, 2011 WL 3809923, 2011 U.S. Dist. LEXIS 96728 (C.D. Cal. Aug. 26, 2011), *aff'd*, 590 F. App'x 680 (9th Cir. 2015).  The parties may submit letter briefs addressing this issue by May 12, 2017.

### Additional Motion in Limine

At the final pre-trial conference, the Court noted that Plaintiff's claims under New York State law for assault and battery, false imprisonment, and malicious prosecution may be duplicative of his claims under Section 1983 for excessive force, false arrest, and malicious prosecution.  *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law."); *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) ("Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law."); *Boomer v. Bruno*, 134 F. Supp. 2d 262, 267 (N.D.N.Y. 2001) ("The elements of a malicious prosecution claim are the same when brought pursuant to § 1983 and when brought under state law."); *see also Blot v. Town of Colonie*, No. 11 Civ. 991, 2017 WL 61943, at *22, 2017 U.S. Dist. LEXIS 1308, at *45 (N.D.N.Y. Jan. 5, 2017) ("regarding Plaintiff's fifteenth and sixteenth claims (of assault and battery under state law), those claims are dismissed on the alternative ground that they are redundant of his federal excessive force claim") (citing cases); *Johnson v. City of New York*, No. 05 Civ. 7519, 2008 WL 4450270, at *13, 2008 U.S. Dist. LEXIS 78984, at *35 (S.D.N.Y. Sept.

29, 2008) ("Plaintiff's state law claims for false arrest and malicious prosecution are duplicative of his section 1983 claims.").

Moreover, Plaintiff's official capacity claims against Defendant Szakacs may also be duplicative of Plaintiff's dismissed claim against the City of Syracuse. *See Kennedy v. City of Albany*, No. 15 Civ. 491, 2015 WL 6394513, at *5, 2015 U.S. Dist. LEXIS 143568, at *12 (N.D.N.Y. Oct. 22, 2015) (dismissing official capacity claims and noting that "[a] claim against officers in their official capacity is essentially a claim against the city").

In the interests of judicial economy and streamlining the upcoming trial, the Court will permit Defendants to file an additional motion in limine regarding the above claims, and Plaintiff will have the opportunity to file a response, as set forth below.

## Conclusion

For the foregoing reasons, it is hereby:

**ORDERED** that Plaintiff's motions in limine (Dkt. Nos. 57, 62, 80) are **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's request to preclude evidence of the 911 call pertaining to his arrest, to the extent it was not heard by Defendant Szakacs before the incident, is **GRANTED;** and it is further

**ORDERED** that Plaintiff's request to allow lay witness testimony of Natalie S. Gordon is **GRANTED** in accordance with the conclusions stated herein; and it is further

**ORDERED** that Plaintiff's request to admit evidence of Defendant Szakacs's firearm is **GRANTED** in accordance with the conclusions stated herein; and it is further

**ORDERED** that Plaintiff's motions in limine (Dkt. No. 57, 62, 80) are **otherwise DENIED;** and it is further

**ORDERED** that Defendants' motions in limine (Dkt. Nos. 48, 66, 84) are **GRANTED in part** and **DENIED in part**;

**ORDERED** that Defendants' request to preclude evidence of the CRB complaint, investigation, and findings letter is **GRANTED**; and it is further

**ORDERED** that Defendants' request to dismiss defendants SPD Sergeant Llukaci, SPD Chief Fowler, and City of Syracuse is **GRANTED;** and it is further

**ORDERED** that Defendants' motions in limine (Dkt. Nos. 48, 66, 84) are **otherwise DENIED;** and it is further

**ORDERED** that Defendants shall file any additional motion in limine regarding Plaintiff's state law and official capacity claims by May 12, 2017; and it is further

**ORDERED** that Plaintiff shall file any response thereto by May 19, 2017; and it is further

**ORDERED** that the parties shall file any letter briefs addressing the issue of whether the jury may handle Defendant Szakacs's Firearm by May 12, 2017.

**IT IS SO ORDERED.**

May 1, 2017
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

15