UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLIFFORD L. WOODS, JR.,

                      **Plaintiff,**

v.                                              5:15-CV-0027   (BKS/ATB)

JOSEPH SZAKACS,

                      **Defendant.**
_____

**APPEARANCES:**

For Plaintiff:
John W. Sharon, Esq.
109 South Warren Street, Suite 314
Syracuse, New York 13202

For Defendant:
Joseph E. Fahey, Corporation Counsel of the
City of Syracuse
Christina F. DeJoseph, Assistant Corporation Counsel
300 City Hall
233 East Washington Street
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

      Plaintiff Clifford L. Woods, Jr. commenced this action under 42 U.S.C. § 1983 claiming that his constitutional rights were violated when he was arrested by Defendant Syracuse Police Officer Joseph Szakacs on January 14, 2014.  (Dkt. No. 1).  The case proceeded to a jury trial that lasted from June 12, 2017 to June 15, 2017.  The jury returned a verdict finding that Plaintiff

1

failed to prove by a preponderance of the evidence his claims against Defendant for unreasonable stop and seizure, false arrest, excessive force, and malicious prosecution. (Dkt. No. 114). Currently before the Court is Plaintiff's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or alternatively for a new trial pursuant to Fed. R. Civ. P. 59(a). (Dkt. No. 119). Defendant opposes the motion. (Dkt. Nos. 120-121). Plaintiff's motion is denied, for the reasons that follow.

## II.  BACKGROUND

As explained in the Court's February 1, 2017 Memorandum-Decision & Order, the evidence presented on summary judgment raised several material issues of fact, including: "whether Officer Szakacs had probable cause to arrest Plaintiff for OGA (Obstructing Governmental Administration in the Second Degree) and Resisting Arrest"; and "whether [Plaintiff] resisted arrest or presented a threat to Officer Szakacs, and therefore, whether the force used by Officer Szakacs was objectively reasonable." (Dkt. No. 35, pp. 10-20).

Before trial, the parties stipulated to a number of facts, including that: 1) On January 14, 2014, at approximately 10:13 p.m, an anonymous caller called 911 and reported observing three black males on the corner of Park Street and Mary Street, one of which was in possession of a black handgun; 2) The anonymous caller reported that the black male he observed with a gun appeared to be in his 30s, approximately 6' 1", heavy set, wearing a black jacket and blue jeans; 3) Defendant Officer Joseph Szakacs responded to the scene and recognized this area as a "tough neighborhood" that has experienced "quite a few problems there with drug dealings, robberies, everything like that"; 4) Officer Szakacs observed a male, later identified as Plaintiff, who matched the description provided by the 911 caller; 5) Officer Szakacs observed two other males with Plaintiff, which also corroborated the 911 caller's information; 6) Officer Szakacs exited his

vehicle, and at some point thereafter observed the butt of a gun sticking out from the pocket of the Plaintiff's pants; 7) Plaintiff admits that he had the gun in his pants pocket; 8) Upon observing Officer Szakacs' marked police vehicle arriving on scene, Plaintiff began to walk away from the two males he was with; 9) When Officer Szakacs exited his vehicle, he drew his department issued handgun and ordered Plaintiff to the ground; 10) However, Plaintiff did not comply with Officer Szakacs' commands to get on the ground, and instead stood still; 11) Officer Szakacs gave Plaintiff several more commands to get down on the ground, but Plaintiff did not comply; 12) Officer Szakacs moved towards Plaintiff and gave additional orders to get on the ground [and] Officer Szakacs used his left hand to grab onto Plaintiff and attempted to pull him to the ground, while ordering him to get on the ground; 13) Plaintiff, whether intentionally or unintentionally, was pulling away in the opposite direction; 14) Officer Szakacs struck Plaintiff on the top of his head with his right hand, which contained his handgun; 15) At the time he was struck by Officer Szakacs' gun, Plaintiffs knees were in contact with the ground; 16) While Plaintiff was on the ground, a black BB gun fell out of Plaintiff's front right pocket; 17) Plaintiff did not point the gun at either Officer Szakacs or Sergeant Llukaci, or have it in his hand during his encounter with the police; and 18) Plaintiff was charged with Obstructing Governmental Administration Second Degree, Resisting Arrest, and Unlawful Possession of Marijuana.  (Dkt. No. 67, ¶¶ 1-11, 18-21, 25-28).

At the trial, the stipulated facts were read to the jury.[1]  Plaintiff testified and called as witnesses Anthony Fullerbey and Clifford Woods, Sr.  Defendant testified and called as witnesses Sergeant Alp Llukaci, Detective Mark Rusin, and two emergency medical technicians.  At no point did Plaintiff make a motion pursuant to Rule 50(a).  Plaintiff now seeks judgment as

---

[1] Plaintiff objected to certain other stipulated facts, which the Court relieved him of and did not read to the jury. (*See* Text Entry dated June 12, 2017).

a matter of law, or a new trial, on the basis that the jury's verdict "was clearly against the weight of the evidence." (Dkt. No. 119, ¶ 3).

### III. DISCUSSION

#### A. Rule 50(b) Motion

As an initial matter, Rule 50(a) of the Federal Rules of Civil Procedure states that a court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Next, Rule 50(b) states that:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). Therefore, "a prerequisite for a motion for a post-trial motion for a judgment as a matter of law (also known as a motion for judgment notwithstanding the verdict) is a motion for judgment as a matter of law." *Henry v. Dinelle*, 929 F. Supp. 2d 107, 113-14 (N.D.N.Y. 2013), *aff'd*, 557 F. App'x 20 (2d Cir. 2014) (citing Fed. R. Civ. P. 50 Advisory Committee Note (1963) ("A motion for judgment notwithstanding the verdict will not lie unless it was *preceded* by a motion for a judgment as a matter of law made at the close of all the evidence.") (emphasis added); Fed. R. Civ. P. 50 Advisory Committee Note (1991) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Exxon Shipping 114 Co. v. Baker*, 554 U.S. 471, 486, n. 5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.")).

4

Since Plaintiff did not make a Rule 50(a) motion during the trial, he must show that relief under Rule 50(b) is necessary "to prevent manifest injustice." *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (citations omitted). "However, 'manifest injustice' exists only when a jury's verdict is 'wholly without legal support.'" *Henry*, 929 F. Supp. 2d at 114 (quoting *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999)). Moreover, in deciding any Rule 50 motion, the Court "must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (citation omitted).

In this case, Plaintiff asserts that: 1) the arrest was unlawful because "there was no cause to arrest until after the unlawful force was used, i.e. resisting arrest and obstruction of government administration"; and 2) the use of force was unreasonable because "there was no crime," "there was no visible threat, and for that matter no threat at all posed by Mr. Woods", and "there is no evidence" that Plaintiff "actively resist[ed] or attempt[ed] to evade by flight." (Dkt. No. 119, ¶¶ 6-7). However, Plaintiff's arguments assume that the jury should have credited his version of events, and thus go to the "proper weight afforded to the trial evidence, which is not a proper basis for a Rule 50(b) motion." *Pouncy v. Danka Off. Imaging Co.*, 393 F. App'x 770, 773 (2d Cir. 2010) (citing *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)).

Furthermore, ample evidence was introduced at trial for the jury to find that Defendant had probable cause to arrest Plaintiff and that Defendant's use of force against Plaintiff was reasonable under the circumstances. First, Plaintiff stipulated that when Defendant arrived on the scene to investigate the 911 call about a man with a handgun, Plaintiff matched the description, Plaintiff walked away from his two companions when he saw the police car, and

5

Plaintiff refused to comply with Defendant's orders to get down to the ground. (Dkt. No. 67, ¶¶ 1-3, 8, 10-11, 17). These facts on their own would allow a jury to find that Defendant had probable cause to arrest Plaintiff for Obstructing Governmental Administration in the Second Degree.[2] Moreover, with respect to the use of force, the parties stipulated that Plaintiff had what appeared to be a real gun, Plaintiff refused orders to get down on the ground, and when Defendant attempted pull Plaintiff down, Plaintiff was pulling away in the opposite direction. (*Id.*, ¶¶ 6-7, 10-11, 18-19). In addition, Defendant testified that: as he was ordering Plaintiff to the ground, Defendant saw the butt of a pistol sticking out Plaintiff's right pants pocket; Defendant thought the gun was real and was concerned for his personal safety; Plaintiff did not comply with Defendant's commands; Plaintiff had his hands at his sides within reach of the gun; Plaintiff turned away from Defendant such that Defendant could not see the gun or Plaintiff's right hand; and Defendant attempted to pull Plaintiff down to the ground, but Plaintiff pulled away. Defendant further testified that he struck Plaintiff because Plaintiff was armed, non-compliant, resisting, and at that point, a "deadly physical threat." This was sufficient evidence for the jury to find that Defendant's use of force was reasonable.[3]

Although Plaintiff argues that he did not present a threat and "was on all fours in the act of complying when struck by defendant Szakacs," (Dkt. No. 119, ¶¶ 7, 12-13), the jury was entitled to credit Defendant's version of events to the contrary, which is largely consistent with

---

[2] "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotations and citation omitted). As relevant here, a person is guilty of Obstructing Governmental Administration in the Second Degree "when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. Penal Law 195.05.

[3] An excessive force claim "is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)).

the stipulated facts. Accordingly, Plaintiff has failed to show that the jury's verdict is wholly without legal support, and his motion for judgment as a matter of law must be denied. *See Kotler v. Jubert*, No. 906CV1308FJSDEP, 2017 WL 2210267, at *3, 2017 U.S. Dist. LEXIS 75537, at *7 (N.D.N.Y. May 18, 2017) ("It was within the jury's purview to credit Defendants' testimony rather than Plaintiff's when considering the evidence. Therefore, the Court finds that there will be no 'manifest injustice' if the Court denies Plaintiff's motion for judgment as a matter of law; and, accordingly, it does so.").

### B. Rule 59 Motion

Under Rule 59(a), a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), "including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). The Second Circuit has explained that "'a decision is against the weight of the evidence . . . if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice.'" *Id.* (quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) (internal alteration omitted)). On a Rule 59 motion for a new trial, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." *DLC Mgt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* (citation omitted). "Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility." *Id.*

As the Court explained above, ample evidence supported the jury's verdict in this case. Ultimately, it is clear that the jury credited Defendant's version of events, and the Court will not disturb this finding, particularly since many of the stipulated facts support Defendant's account.

7

In sum, Plaintiff has failed to show that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. Therefore, Plaintiff's motion for a new trial must be denied.[4] *See Travel Ctr. of Fairfield County, Inc. v. Royal Cruise Line Ltd.*, 154 F. Supp. 2d 281, 290 (D. Conn. 2001) (declining to order a new trial where "[w]itness credibility was essential to the jury's determination in this case, as it was required to ascertain the intent of the parties and what really transpired"), *aff'd sub nom. Travel Cener of Fairfield County, Inc. v. Royal Cruise Line, Ltd.*, 43 F. App'x 461 (2d Cir. 2002).

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion for judgment as a matter of law or alternatively for a new trial (Dkt. No. 119) is **DENIED**.

**IT IS SO ORDERED.**

August 4, 2017
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge

---

[4] Plaintiff also states that "at least three of the jurors were observed sleeping during the trial," and that "there were no potential jurors of color available in this trial." (Dkt. No. 119, ¶ 14). However, at no point during jury selection or the trial did Plaintiff raise any objection regarding the jury. Moreover, the Court finds that Plaintiff has not made any showing (or cited any authority) that these newly alleged jury issues warrant relief under Rule 50(b) or Rule 59.